UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

DARREL LOREN COURSON,

        Plaintiff,

     v.                                                             18-CV-1262
                                                                    DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

———————————————————————


On November 9, 2018, the plaintiff, Darrel Loren Courson, brought this action

under the Social Security Act ("the Act").  He seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that he was not disabled.  Docket

Item 1.  On May 28, 2019, Courson moved for judgment on the pleadings, Docket Item

6; on September 26, 2019, the Commissioner responded and cross-moved for judgment

on the pleadings, Docket Item 13; and on October 17, 2019, Courson replied, Docket

Item 15.

For the reasons stated below, this Court grants Courson's motion in part and

denies the Commissioner's cross-motion.


## BACKGROUND

### I.   PROCEDURAL HISTORY

On June 17, 2015, Courson applied for Disability Insurance Benefits.  Docket

Item 5 at 71.  He claimed that he had been disabled since April 23, 2013, due to two

spinal fusions, chronic pain, nerve damage, an overactive bladder, incontinence, hemorrhoids, anxiety, and depression. *Id.* at 71-72.

On September 23, 2015, Courson received notice that his application was denied because he was not disabled under the Act. *Id.* at 70. He requested a hearing before an administrative law judge ("ALJ"), *id.* at 97, which was held on November 7, 2017, *id.* at 31. The ALJ then issued a decision on February 27, 2018, confirming the finding that Courson was not disabled. *Id.* at 19-26. Courson appealed the ALJ's decision, but his appeal was denied, and the decision then became final. *Id.* at 5.

## II.     RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Courson's claim. Courson was examined by several different providers, but the opinions of Gordon C. Steinagle, D.O., M.P.H.; Abrar Siddiqui, M.D.; and Stuart Rubin, M.D., are of most significance to the claim of disability here.

### A.     Gordon C. Steinagle, D.O., M.P.H.

On March 17, 2015, Dr. Steinagle, an internist, evaluated Courson. Docket Item 5 at 406. Dr. Steinagle reported that Courson had "chronic, unrelenting radicular pain in both legs and into his feet." *Id.* at 407. Courson's "legs [were] also weak and he state[d] that he [was] not steady on his feet." *Id.*

Courson reported that he "need[ed] help with cooking" and with "dressing at times" but that he could "feed and toilet [him]self." *Id.* He could "drive very short distances" and "walk up a few stairs" but could not "walk distances." *Id.*

Dr. Steinagle observed that Courson's gait was "antalgic" and he was "unable to perform" a "[h]eel and toe walk." *Id.* at 408. He had limited mobility in his lumbar spine,

2

and his straight leg raise was positive bilaterally. *Id.* Dr. Steinagle also noted a "[r]esting tremor." *Id.* Ultimately, Dr. Steinagle concluded that Courson was not "capable of working in a sedentary or light capacity" because he could not "lift 10 lbs. occasionally (up to 1/3 of a day) and/or walk occasionally (up to 1/3 of a day)." *Id.* at 406-07.

### B. Abrar Siddiqui, M.D.

On August 17, 2015, Dr. Siddiqui, an internist, evaluated Courson. *Id.* at 603. Dr. Siddiqui noted that Courson "complain[ed] of [constant] back pain" that was "8/10 in intensity" and "sharp, dull, aching, [and] burning in nature." *Id.* The pain "radiat[ed] to both hips and legs [and was] associated with tingling and numbness." *Id.* As a result, Courson "stumble[d] sometimes while walking." *Id.*

Dr. Siddiqui observed that Courson "appeared to be in no acute distress." *Id.* at 604. Courson was, however, "shaking while walking" and could walk on his heels and toes only "with difficulty." *Id.* He was able to squat up to 20 degrees and get up from his chair without difficulty. *Id.* Courson's "[c]ervical spine show[ed] full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally." *Id.* at 605. His "[l]umbar spine show[ed] flexion restricted to 15 degrees bilaterally, and rotary movement restricted to 15 degrees bilaterally." *Id.* His straight leg raise was "negative bilaterally." *Id.* Dr. Siddiqui opined that Courson had "mild to moderate limitations in [his] ability to push, pull, or carry heavy objects." *Id.* at 606.

### C. Stuart Rubin, M.D.

On April 19, 2016, Dr. Rubin, a pain-management specialist, evaluated Courson's medical records. *Id.* at 702. Based on that review, Dr. Rubin opined that

Courson could sit for "[o]ne-half-hour at a time up to seven hours per day with the ability to change position every 15 minutes"; could stand and/or walk for "15 minutes at a time up to one hour a day with [an] appropriate assistive device and safety rails"; could lift, carry, push, and/or pull "0 pounds while standing and up to 15 pounds while sitting"; could reach above shoulder level or below desk level "occasionally" while sitting but "[n]ever" while standing; and could reach at desk level "[f]requently" while sitting. *Id.* at 706.

## III.    THE ALJ'S DECISION

In denying Courson's application, the ALJ evaluated Courson's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ

finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four.  § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC").  *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e).  The RFC is a holistic assessment of the claimant—addressing both severe and non-severe medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy.  *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four.  20 C.F.R. § 404.1520(e).  If the claimant can perform past relevant work, he or she is not disabled and the analysis ends.  § 404.1520(f).  But if the claimant cannot, the ALJ proceeds to step five.  §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(v), (g).  More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ found at step one that Courson had not engaged in substantial gainful activity since the alleged onset date.  Docket Item 5 at 21.  At step two, the ALJ found that Courson had "the following severe impairments: degenerative disc disease of the cervical, thoracic and lumbar spine status post lumbar fusion at L5-

S1, and laminotomy surgery with placement of a spinal cord stimulator, neurogenic

bladder." *Id.*

At step three, the ALJ determined that Courson did "not have an impairment or

combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 23.  More

specifically, the ALJ concluded—without any analysis or explanation—that Courson

"does not meet the requirements of any impairment in section 1.00, 6.00, or 11.00." *Id.*

The ALJ then found that Courson had the following RFC:

> [Courson can] perform light work[1] . . . except [that Courson] can lift, carry,
> push and pull twenty pounds occasionally and ten pounds frequently[;] can
> sit for six hours and stand or walk for six hours[;] can occasionally climb
> stairs and ramps[;] can occasionally climb ropes, ladders or scaffolds[;
> and] can occasionally balance, stoop, kneel, crouch and crawl.

*Id.* (footnote added).  The ALJ explained that although "[Courson]'s medically

determinable impairments could reasonably be expected to cause [his] alleged

symptoms[,] . . . [Courson]'s statements concerning the intensity, persistence and

limiting effects of [those] symptoms [were] not entirely consistent with the medical

evidence and other evidence in the record."  *Id.* at 24 .  In reaching this determination,

the ALJ gave "great weight" to the opinion of Dr. Siddiqui, *id.* at 25, but did not even

mention Dr. Steinagle's and Dr. Rubin's opinions.

At step four, the ALJ found that Courson was "capable of performing [his] past

relevant work as an Office Manager . . . , an Insurance Salesperson . . . , a Sales Clerk

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be
very little, a job is in this category when it requires a good deal of walking or standing, or
when it involves sitting most of the time with some pushing and pulling of arm or leg
controls."  20 C.F.R. § 404.1567(b).

. . . , and a Collections Clerk.  *Id.*  Therefore, the ALJ found that Courson was not disabled.  *Id.*

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry."  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id.*  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles."  *Johnson*, 817 F.2d at 986.

**DISCUSSION**

## I.     ALLEGATIONS

Courson argues that the ALJ erred in failing to properly consider whether

Courson's degenerative disc disease met medical Listing 1.04 and in ignoring certain

evidence, including Dr. Steinagle's and Dr. Rubin's opinions, when determining

Courson's RFC.  Docket Item 6-1 at 16, 19.  This Court agrees that the ALJ erred

prejudicially and therefore remands this matter to the Commissioner for proper

consideration of Listing 1.04 and of Dr. Steinagle's and Dr. Rubin's opinions.

## II.    ANALYSIS

### A.  Listing 1.04

A claimant is disabled if his impairments meet or medically equal one of the

specific requirements of a medical listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.

20 C.F.R. § 404.1520(a)(4)(iii).  Here, the ALJ concluded that Courson "does not meet

the requirements of any impairment in section 1.00, 6.00, or 11.00."[2]  *Id.*  Courson

argues that the ALJ erred in failing to explain why Courson's severe degenerative disc

disease did not meet Listing 1.04 (disorders of the spine).  This Court agrees.

To meet Listing 1.04, a claimant must prove:

> 1. A disorder of the spine, including but not limited to
> "herniated nucleus pulposus, spinal arachnoiditis, spinal
> stenosis, osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture," and

---

[2]  As noted above, the ALJ offered nothing more than this bald conclusion at step
three.  Because this Court remands for other reasons, the question of whether such a
conclusion—without analysis or explanation—is sufficient will await another day.

2. "Compromise of nerve root (including the cauda equina)
or the spinal cord," and

3. "Evidence of nerve root compression characterized by
neuro-anatomic distribution of pain, limitation of motion of
the spine, motor loss (atrophy with associated muscle
weakness or muscle weakness)," and

4. "Sensory or reflex loss," and if there is involvement of the
lower back,

5. "Positive straight-leg raising test" in both the sitting and
supine position.

*Ramirez Morales v. Berryhill*, 2019 WL 1076088, at *3 (W.D.N.Y. Mar. 7, 2019) (quoting

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A). Here, there is record evidence

suggesting that Courson met each of these criteria. A Magnetic Resonance Imaging

(MRI) report from March 2013 showed "effacement of the undersurfaces of the exiting

L5 nerve roots." Docket Item 5 at 1007. Moreover, treatment notes indicated that

Courson had "neuro-anatomic distribution of pain, limitation of motion of the spine,

motor loss[, and] . . . reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A; *see,

e.g.*, Docket Item 5 at 442 (March 2014 treatment notes diagnosing Courson with

"[n]euritis or radiculitis thoracic or lumbosacral unspecified"); *id.* at 444 (May 2014

treatment notes reporting that Courson was "still dealing with severe muscle spasms

and posterior lumbar pain"); *id.* at 462 (July 2014 treatment notes reporting "[d]ecreased

strength, faulty posture, decreased flexibility, increased pain and decreased range of

motion"); *id.* at 474 (March 2015 treatment notes indicating that Courson's

"[l]umborsacral [s]pine . . . [r]ange of motion is limited"). Finally, Dr. Steinagle's March

2015 evaluation reported a positive straight-leg raising test. *Id.* at 408.

The Commissioner argues that "there are plenty of instances where [Courson's strength] was rated as normal" and that Dr. Siddiqui's August 2015 evaluation reported a negative straight-leg raising test. Docket Item 13-1 at 12-13. But when a claimant, such as Courson, "appears to meet *at least some* of the requirements of a listing, the ALJ is obligated to explain his reasons for finding that the listing is not met." *Nelson v. Colvin*, 114 F. Supp. 3d 69, 75 (W.D.N.Y. 2015) (emphasis added); *see also Ramirez Morales*, 2019 WL 1076088, at *4 ("Here, the record evidence suggests that Plaintiff's symptoms could meet the requirements in Listing 1.04(A). Because the ALJ did not refer to the Listing specifically, the Court cannot determine whether the ALJ properly considered it."); *Estrada ex rel. E.E. v. Astrue,* 2010 WL 3924686, at *5 (E.D.N.Y.2010) ("Without knowing the rationale behind the ALJ's conclusion that [the plaintiff] did not meet or equal the listing criteria, this court is unable to conclude that the ALJ's decision was supported by substantial evidence."). Indeed, the ALJ did not simply fail to explain his reasons for finding that Courson did not meet Listing 1.04; rather, he never even mentioned that listing. And while the ALJ did mention "section 1.00," which includes Listing 1.04, that conclusory reference does not give this Court any reason to believe that he specifically considered that listing.

Moreover, to the extent that there are inconsistencies in the record, it is the ALJ's responsibility to resolve them. *See Netter v. Astrue*, 272 F. App'x 54, 55 (2d Cir. 2008) (explaining that "[i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts" (alteration in original) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983))). In particular, as explained in more detail below, the ALJ was obligated to consider Dr. Steinagle's opinion, which reported

a positive straight-leg raising test.  And to the extent that opinion was inconsistent with

Dr. Siddiqui's findings, the ALJ was required either to resolve that inconsistency or to

explain why he gave more weight to one than the other.

Because the ALJ failed to address whether Courson's degenerative disc disease

met Listing 1.04, this Court cannot effectively review the ALJ's decision at step three.

Accordingly, this Court remands this matter so that the ALJ can address Listing 1.04.

**B.      The ALJ's Failure to Consider the Opinions of Drs. Steinagle and Rubin**

When determining a plaintiff's RFC, the ALJ must "evaluate *every medical*

*opinion . . . receive[d]*."  20 C.F.R. § 416.927(c) (emphasis added).  "[O]nly 'acceptable

medical sources' can be considered treating sources . . . whose medical opinions may

be entitled to controlling weight.  'Acceptable medical sources' are further defined (by

regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified

speech-language pathologists."  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008)

(citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).

Thus, while the ALJ may consider the opinions of "other sources"—e.g., nurse

practitioners—there is no obligation to assign weight or give deference to these

sources.  *Id.*  But the ALJ nevertheless "should explain the weight given to opinions

from these 'other sources,' or otherwise ensure that the discussion of the evidence in

the determination or decision allows a claimant or subsequent reviewer to follow the

adjudicator's reasoning, when such opinions may have an effect on the outcome of the

case."  SSR 06-03P, at *6.  And when there is conflicting evidence in the claimant's

record, "[t]he consistency of the opinion with the other evidence in the record is a proper

11

factor for an ALJ to consider when weighing an opinion from an 'other source.'" *Id.* at *4

(citing 20 C.F.R. § 404.1527(d) and § 416.927(d)).

Here, the ALJ appears to have completely ignored the opinions of Drs. Steinagle

and Rubin. *See Colon v. Astrue*, 2013 WL 2245457, at *11 (W.D.N.Y. May 21, 2013)

(explaining that "[i]t was an abuse of discretion for [the ALJ] to entirely ignore" a medical

opinion). Moreover, that error was not harmless: both those opinions found functional

limitations that were more restrictive than the ALJ's RFC finding. *Cf. Zabala v. Astrue*,

595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct

legal principles to the record could lead [only to the same] conclusion"). For example,

Dr. Steinagle explicitly opined that Courson could not perform light or sedentary work,

Docket Item 5 at 406-07, and Dr. Rubin opined that Courson could stand or walk only

"up to one hour a day," *id.* at 706—less than the six hours in the ALJ's RFC

determination, *id.* at 23.

Accordingly, this Court remands this matter for the ALJ to consider Dr.

Steinagle's and Dr. Rubin's opinions.[3]

---

[3]  This Court "will not reach the remaining issues raised by [Courson] because
they may be affected by the ALJ's treatment of this case on remand." *Watkins v.
Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*,
2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper
legal standard, the Court will decline at this time to consider whether substantial
evidence exists to support the findings the ALJ made.").

## **CONCLUSION**

For the reasons stated above, Courson's motion for judgment on the pleadings, Docket Item 6, is GRANTED in part and DENIED in part, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 13, is DENIED.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.


Dated:     January 7, 2020
           Buffalo, New York


                                          *s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE